IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KÖRBER SUPPLY CHAIN US, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> DOT HOLDINGS CO., <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 24-00236-RGA |

MEMORANDUM ORDER

Before me is Körber Supply Chain US's ("Körber") partial motion to dismiss Counts II-V of Dot Holdings' ("Dot") counterclaim. (D.I. 18). I have considered the parties' briefing. (D.I. 19, 21, 22). For the reasons set forth below, this motion is **GRANTED**.

I.   **BACKGROUND**[1]

Dot is the parent company of Dot Foods, Inc., "a food logistics company which contracts with food manufacturers and distributors to transport food products between the manufacturer and the distributor." (D.I. 12 at 11 ¶ 7). Körber is a software company that provides "supply chain software solutions." (*Id.* at 11 ¶ 11).

Dot issued a Request for Proposal to multiple software vendors including Körber. (*Id.* at 12 ¶ 13). This proposal included "approximately 121 specific questions centering around whether the vendors could provide an [Order Management System]" that satisfied Dot's needs. (*Id.* at 12 ¶ 17). Dot needed a system that could handle Dot's "required inventory allocation

---

[1] I summarize the factual background in the light most favorable to Counterclaim Plaintiff Dot.

1

logic in the business-to-business context." (*Id.*). Körber responded to Dot's proposal, "representing it was a 'Full Fit'" for 108 of Dot's requirements. (*Id.* at 13 ¶ 19). After discussion between the parties, Dot provided Körber with some functions and "Dot-specific rules" that it required the software to be able to handle. (*Id.* at 14 ¶¶ 26–27). Körber demonstrated to Dot that its software could do so "without customization." (*Id.* at 15 ¶ 28).

Dot entered into a contract with Körber for software and services on November 30, 2022. (*Id.* at 17 ¶ 37; D.I. 12-1 at 8, 31, 39 of 39). The contract is comprised of three documents: (1) Master Solutions Agreement ("MSA"); (2) Statement of Work #001 ("SOW"); and (3) Software Services Agreement ("SSA"). (D.I. 12 at 17 ¶ 38; D.I. 12-1).

Dot soon learned that Körber's software could not, in fact, serve Dot's needs "out-of-the-box." (D.I. 12 at 21 ¶ 56). Körber continued to assure Dot it could find a solution, but after much back and forth, Dot realized that "Körber's [Order Management System] was technologically incompatible" with Dot's requirements and logic rules. (*Id.* at 27 ¶ 84). Dot terminated the contract pursuant to section 3.2 of the MSA on October 20, 2023. (*Id.* at 28 ¶ 91; D.I. 12-1 at 3 of 39, MSA § 3.2).

Körber filed a complaint claiming breach of contract and breach of implied covenant of good faith and fair dealing. (D.I. 1 at 10–12 ¶¶ 49–63). I dismissed the claim for breach of implied covenant of good faith and fair dealing. (D.I. 25). Dot filed five counterclaims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, fraudulent omission, and equitable fraud by omission. (D.I. 12 at 29–37 ¶¶ 96–142). Körber moves to dismiss Counts II through V of Dot's counterclaim. (D.I. 18).

2

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Deciding whether a

claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 9 adds a heightened pleading standard for allegations of fraud. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). However, Rule 9 allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III. DISCUSSION[2]

### A. Anti-reliance

Körber argues that Sections 7.4 and 14.1 of the SSA combined with section 15.6 of the MSA "add up to a clear anti-reliance clause." (D.I. 19 at 17 (quoting *Prairie Cap. III, L.P. v. Double E. Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015))). Accordingly, Körber claims that Dot waived its fraud claims because it "disclaimed all representations and warranties except those expressly contained in the Agreement." (D.I. 19 at 16).

The relevant portions of these provisions state:

> ... [KÖRBER] FURTHER MAKES NO WARRANTIES OR REPRESENTATIONS AS TO THE USEFULNESS, SUITABILITY, OR EFFECTIVENESS OF THE SOFTWARE SERVICES. ...
>
> FURTHER, EXCEPT AS STATED IN THIS SECTION OR AS REQUIRED BY LAW, EACH PARTY DISCLAIMS ALL OTHER WARRANTIES, WITH

---

[2] The parties agree that this court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. (D.I. 1 at 3 ¶ 11; D.I. 12 at 10 ¶ 3). The parties also agree that this dispute is governed by Delaware law due to the choice of law provisions contained in the Agreement. (D.I. 10 at 3 n.3; D.I. 19 at 6 n.2; D.I. 12-1 at 7–8 of 39, § 15.3, MSA; *Id.* at 29 of 39, § 14.4, SSA).

4

> RESPECT TO THIS AGREEMENT WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF QUALITY, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(D.I. 12-1 at 21 of 39, SSA § 7.4).

> This Agreement together with the Schedules all of which are specifically incorporated herein by reference, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any and all prior expressions, whether oral or written including but not limited to any proposal or response to a request for proposal. . . .

(D.I. 12-1 at 28 of 39, SSA § 14.1).

> Each Order and [Statement of Work], and the terms of this Agreement and the Schedules hereto as incorporated into each such Order and [Statement of Work], constitutes the entire agreement and understanding between the parties thereto with respect to the subject matter thereof, and supersedes and nullifies any and all prior and contemporaneous expressions, whether oral or written, including but not limited to any proposal or response to a request for proposal, purchase orders, or Client forms. . . .

(D.I. 12-1 at 8 of 39, MSA § 15.6).

Sophisticated parties may contract to "eliminate the risk of future claims of fraud or misrepresentation by contractually specifying what representations the parties are and are not making and relying upon." *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *18 (Del. Super. Ct. Sept. 23, 2021) (internal quotation marks omitted). "An anti-reliance provision must be explicit, and a standard integration clause is not enough." *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 140 (Del. Ch. 2009). "Only if the contract's terms, 'when read together, can be said to add up to a clear anti-reliance clause by which the [claimant] has contractually promised that it did not rely on statements outside the contract's four corners' will a court bar a fraud claim based on extra-contractual representations." *Humanigen*, 2021 WL 4344172, at *18 (quoting *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004)) (alteration in original). Further, to bar a fraud claim, disclaimer language must "come from the

5

point of view of the aggrieved party (or all parties to the contract)[.]" *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 860 (Del. Ch. 2016). "The difference between a disclaimer from the point of view of a party accused of fraud and from the point of view of a counterparty who believes it has been defrauded may seem inconsequential . . . . The difference is critical, however, because of the strong public policy against fraud." *Id.*

Section 14.1 of the SSA and Section 15.6 of the MSA are standard integration clauses. They contain no anti-reliance language and simply "defin[e] the parties' agreement." *Airborne Health*, 984 A.2d at 141. Section 7.4 contains a disclaimer of warranties by both parties, but only Körber—the party accused of fraud—states that it makes no representations. No language in the contract states explicitly that Dot—the aggrieved party—does not rely on any representations outside the contract. *See FdG Logistics*, 131 A.3d at 860. Therefore, though "Delaware law does not require magic words," the language in the SSA and MSA does not "add up to a clear anti-reliance clause." *Prairie Capital III*, 132 A.3d at 51.

I find that the agreement between the parties does not disclaim reliance on representations outside of the contract or bar Dot's claims of extra-contractual fraud.

## B. Economic loss rule

"The economic loss doctrine is a judicially created doctrine that allows a party to recover in tort only if losses are accompanied by bodily harm or property damage; in other words, the doctrine prevents plaintiffs from recovering in tort for losses suffered that are solely economic in nature." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012). "[E]conomic loss doctrine is especially suited to cases where privity of contract does exist." *Danforth v. Acorn Structures Inc.*, 608 A.2d 1194, 1200 (Del. 1992) (applying economic loss doctrine to products liability). "[W]here an action is based entirely on a breach of

the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *McKenna v. Terminex Int'l Co.*, 2006 WL 1229674, at *2 (Del. Super. Ct. Mar. 13, 2006) (alteration in original) (quoting *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, 2005 WL 445710, at *3 (Del. Super. Ct. Feb. 23, 2005)). The doctrine has its roots in product liability, but Delaware courts have expanded the economic loss rule to apply to "any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or property other than the bargained for item." *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, 2002 WL 1335360, at *5 (Del. Super. Ct. June 13, 2002).

### 1. Fraud

To make out a claim of common law fraud in Delaware, "the plaintiff must plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006); *see Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

"[E]conomic loss doctrine does not always bar fraud claims, even where purely economic losses are asserted." *R. Keating & Sons, Inc. v. Chiselcreek Dev., LLC*, 2020 WL 6390676, at *4 (Del. Super. Ct. Oct. 30, 2020). However, a breach of contract claim cannot be "bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." *Midland Red Oak Realty*, 2005 WL 445710, at

\*3 (citation omitted). To assert a claim for fraud alongside a contract claim, "the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract." *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at \*15 (Del. Ch. June 11, 2020) (citation omitted). "Allegations of fraud that go directly to the inducement of the contract, rather than its performance, would present a viable claim." *Brasby v. Morris*, 2007 WL 949485, at \*7 (Del. Super. Ct. Mar. 29, 2007).

In support of a fraudulent inducement claim, Count II of Dot's counterclaim focuses on Körber's alleged misrepresentations during the Request for Proposal and pre-contract process. (D.I. 12 at 30–31 ¶ 109). Count IV focuses on Körber's failure to correct those same misrepresentations before entering the Agreement with Dot. (D.I. 12 at 35 ¶ 130–31). Otherwise, Counts II and IV are largely identical regarding the parties' pre-contract interactions. For the purposes of this discussion, I will treat Counts II and IV together.

Dot alleges facts in its fraudulent misrepresentation and fraudulent omission claims that "go directly to the inducement of the contract." *Id.* Dot points to several statements Körber made and failed to correct in its request for proposal and during the pre-contract process that Dot alleges it relied upon when it decided to enter into the Agreement. (D.I. 12 at 30–31 ¶ 109; *Id.* at 33 ¶ 120; *Id.* at 35 ¶¶ 130, 133).

I find that the economic loss rule does not bar Dot's fraudulent misrepresentation or omission claims (Counts II and IV), at least so far as they are based on the misrepresentations and omissions that occurred prior to the signing of the contract.

### 2. Negligent Misrepresentation

"Negligent misrepresentation is essentially a species of fraud with a lesser state of mind requirement, but with the added element that the defendant must owe a pecuniary duty to the plaintiff." *Vichi v. Koninklijke Phillips Elecs., N.V.*, 85 A.3d 725, 822 (Del. Ch. 2014).

Delaware recognizes section 552 of the Restatement (Second) of Torts as a narrow exception to the economic loss rule for claims of negligent misrepresentation. *Christiana Marine*, 2002 WL 1335360, at *6 (characterizing Delaware's exception as a "narrow application and strict construction" of section 552); *see Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990) (adopting section 552). Section 552 provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (Am. L. Inst. 1977).

Two elements are required in order to invoke this exception to the economic loss rule. First, a defendant must "be in the business of supplying information." *CB Lewes, LLC v. Brightfields, Inc.*, 2022 WL 3695424, at *3 (Del. Super. Ct. Aug. 25, 2022). Second, the defendant must "have supplied the information to the plaintiff for use in business transactions with third parties." *Id.* "[T]he point where one crosses the line into the business of 'supplying information' has not been definitively resolved by Delaware courts." *Id.* However, "[a] defendant will not be considered an information provider 'where the information supplied is merely ancillary to the sale of a product or service in connection with the sale.'" *Id.* (quoting

9

*Christiana Marine*, 2002 WL 1335360, at *7). Software is an example of a product that "is not itself information." *Christiana Marine*, 2002 WL 1335360, at *7.

I agree with Körber that neither element of the exception is satisfied. (*See* D.I. 22 at 2–3). Körber is not in the business of selling information—the information that Körber provided to Dot about its software and services was ancillary to the agreement to provide software and services. Dot did not plan to use this information in transactions with third parties. Rather, Dot used the information to decide whether to enter into a contract with Körber.

I find that Dot's negligent misrepresentation claim is barred by the economic loss rule. Dot cannot satisfy the exception provided by section 552. Körber's motion to dismiss Count III is **GRANTED**. Count III of Dot's counterclaim is **DISMISSED**.

### C. Equitable Fraud

Equitable fraud requires similar elements to common law fraud, except that a "claimant need not show that the respondent acted knowingly or recklessly—innocent or negligent misrepresentations or omissions suffice." *Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *7 (Del. Ch. Apr. 30, 2014) (citations omitted). Despite this lack of a scienter element, equitable fraud does not swallow up all other fraud claims because it can only arise when there is (1) "a special relationship between the parties or other special equities, such as some form of fiduciary relationship; or (2) a justification for a remedy that only equity can afford." *Id.* (cleaned up).

"[A] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another." *Id.* at *8 (citation omitted). Dot does not allege a fiduciary or otherwise special relationship between the parties. Accordingly, to state a claim for equitable fraud, Dot must "show that an action at

10

law for damages would not provide an adequate remedy and that only equity will afford it full, fair, and complete relief." *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009). Other than requesting interest and fees and costs, Dot does not request equitable relief. (D.I. 12 at 38). An action at law would seem to provide Dot with an adequate remedy.[3]

I find that Dot has not adequately pled an equitable fraud claim. Körber's motion to dismiss Count V is **GRANTED**. Count V of Dot's counterclaim is **DISMISSED**.

### D. Rule 9 Heightened Pleading Standard

Körber claims that Dot has failed to plead its fraud claims with sufficient particularity. (D.I. 19 at 18). Specifically, Körber argues Dot failed to identify how or why Körber knew representations it made were false when it made them. (*Id.* at 18). Körber argues that Rule 9(b) requires a plaintiff to "detail the precise allegations for why the plaintiff asserts the statement was false and the basis for alleging why [the] plaintiff contends the defendant knew it was false." (*Id.*).

Rule 9(b) requires that a plaintiff support their allegations of fraud with "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where, and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 217 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

This standard may be relaxed "where the factual information is peculiarly within the defendant's knowledge or control." *In re Burlington Coat Factory*, 114 F.3d at 1418. "Courts must be sensitive to the fact that application of 9(b) prior to discovery 'may permit sophisticated

---

[3] Körber argues that the equitable fraud claim is equivalent to a negligence claim and similarly barred by the economic loss doctrine. (D.I. 22 at 1). As the equitable fraud claim is dismissed on other grounds, I do not need to address this argument.

11

defrauders to successfully conceal the details of their fraud.'" *Craftmatic Sec. Lit. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citation omitted). Accordingly, Rule 9 allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Despite this lower standard, "plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter.'" *In re Burlington Coat Factory*, 114 F.3d at 1418 (agreeing with the Second Circuit's approach, which requires "specific facts that give rise to a 'strong inference'"). A plaintiff "must either (1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *Id.* at 1422.

I find that Dot has not pleaded its remaining fraud claims, Counts II and IV, sufficiently to survive a Rule 12(b)(6) motion to dismiss. In both Counts II and IV, Dot alleged the following pre-contract misrepresentations made by Körber, which it failed to correct:

(a) [Körber's] June 2021 [Request for Proposal] response that the [Order Management System] was a "full-fit" to "support segmentation of customers, specifically as it relates to the allocating inventory for [Business to Business] orders";

(b) [Körber's] June 2021 [Request for Proposal] Response that the [Order Management System] was a "full-fit" for the requirement that the [Order Management System] "have the ability to reserve inventory and allocate prior to the order deadline";

(c) [Körber's] June 2021 [Request for Proposal] Response that the [Order Management System] was a "full-fit" for the requirement that the [Order Management System] "have the ability to allocate optimal inventory based on Dot specific business rules";

(d) [Körber's] statement at the meeting with Dot on January 19, 2022 that it could provide an [Order Management System] with Fair Share functionality capable of implementing Dot-specific rules;

(e) [Körber's] statement at the January 19, 2022 meeting that it had the ability to provide software with "dynamic order allocation";

12

    (f)    [Körber's] statement at the January 19, 2022 meeting that a "base capability" of its software was "automatically and continuously . . . allocat[ing] and reallocat[ing] inventory to customer orders based on demand"; and

    (g)    [Körber's] representation at the June 9, 2022 meeting with Dot that its software could easily create and maintain logic and rules for the would-be Dot [Order Management System], which, if true, would allow the Fair Share portion of the [Order Management System] to allocate and re-allocate product in real-time using Dot-specific factors to determine how much product each ordering-distributor would receive.

(D.I. 12 at 30–31 ¶ 109; *Id.* at 35 ¶ 130).

"Forward looking statements" and "puffery" cannot give rise to actionable common law fraud. *WyPie Investments, LLC v. Homschek*, 2018 WL 1581981, at *7 (Del. Super. Ct. March 28, 2018). Neither can "predictions about the future" nor "expressions of opinion." *Great Lakes Chemical Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001).

The claims in allegations (a), (b), and (c) that Körber's software was a "full fit" appear to be representations about something already existing.[4] Likewise Körber's statement in (f) about the software's "base capability."[5] Allegations (d), (e), and (g), however, are forward looking statements. Körber's statements that it "could provide," "had the ability to provide," and "could easily create" do not represent facts about something presently existing.

Dot's allegations provide "what," "when," "where," and "how." (*See* D.I. 12 at 13–15 ¶¶ 18–29). Dot also pleaded the "who" for the January 19, 2022 demonstration—three senior level Körber employees: Chad Andrews, Ken Mullen, and Louis Pagan-Rodriguez. (D.I. 12 at 13–14 ¶¶ 20, 25). Andrews is Körber's current Director of Solution Engineering, Mullen is a current

---

[4] I say "appear to be" because "full fit" appears to be jargon used in the software industry. What a reasonable software professional would understand "full fit" means is not explained.
[5] I am not sure the complaint alleges that the statement is false. Certainly, the complaint alleges that Körber personnel could not make a product that met Dot's requirements. But Dot's requirements were more complex than what the quoted statement represented Körber could do.

strategic account executive, and Pagan-Rodriguez was a Senior Solutions Architect when these representations were made. (*Id.* at 13 ¶ 20). However, other than potentially the statement about "base capability," the statements Dot alleges from the January 19, 2022 demonstration cannot give rise to an actionable fraud claim.

Regarding scienter, it may be inferred that the employees a company sends to do demonstrations on its behalf know what the company's product can and cannot do. But for Körber's "full fit" representations, Dot does not allege who made the statements in Körber's written response to the June 2021 Request for Proposal or what they knew when. (*See* D.I. 12 at 13 ¶ 18). Unless a plaintiff alleges that the identity of a speaker is in the "exclusive control" of the defendant,[6] Rule 9(b) requires that a plaintiff allege an individual speaker to satisfy the "who" requirement. *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994); *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (holding that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements"); *Frederico*, 507 F.3d at 201 (agreeing with finding by lower court that it was insufficient under Rule 9(b) to be "informed by Defendant" corporation Home Depot without disclosing particular individual who provided the information). Additionally, the fact that the Körber representatives at the post-contract "kick-off meeting" "demonstrate[ed] a complete lack of understanding of the basic nature of Dot's business" cuts against the inference that Körber knew its product could not do what Dot needed from the outset. (D.I. 12 at 19 ¶¶ 47–48).

I find that Dot's pleadings do not satisfy the heightened pleading standard of Rule 9(b) but grant Dot leave to amend. Körber's motion to dismiss the remaining fraud counts, Counts II and IV, is **GRANTED**. Counts II and IV are **DISMISSED**.

---

[6] Dot does not allege this.

14

## IV. CONCLUSION

Körber's partial motion to dismiss Counts II–V of Dot's counterclaim is **GRANTED**. I grant Dot leave to amend Counts II and IV if the amended counterclaims are filed within two weeks.

IT IS SO ORDERED.

Entered this 13th day of February, 2025

_____
United States District Judge

15